UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

SARAH RAMOS, ISRAEL CINTRON, OSCAR FERNANDEZ, ANGEL SUAREZ, JULIO SUAREZ, and ODALIS TORRES,

                                       Plaintiffs,

   -against-

THE CITY OF NEW YORK, a municipal entity; NEW YORK POLICE OFFICER ANDREA OJOBI (Tax # 955271) in her individual and official capacity and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued individually and in their official capacities,

                                        Defendants.

------------------------------------------------------------------- X

15-cv-08611 (PKC)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL**

Plaintiffs SARAH RAMOS, ISRAEL CINTRON, OSCAR FERNANDEZ, ANGEL SUAREZ, JULIO SUAREZ, and ODALIS TORRES ("PLAINTIFFS"), by their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint against the defendants named above allege as follows:

**PRELIMINARY STATEMENT**

     1.    This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for injuries PLAINTIFFS sustained from the unconstitutional conduct of defendants THE CITY OF NEW YORK and New York City Police Department police officers ANDREA OJOBI and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc.

     2.    PLAINTIFFS care for and maintain a community garden located in the Bronx, New York. Although the community garden is intended to enhance and benefit PLAINTIFFS'

neighborhood, PLAINTIFFS' are frequently harassed by police officers of the 46th Precinct. Members of the 46th Precinct have conducted unlawful raids of the community garden in which they have destructively searched that property. They have also improperly stopped, searched and falsely arrested persons present at the garden, and improperly told persons that they could not remain on the public sidewalk in front of the garden.

3. On or about the night of August 2, 2014, PLAINTIFFS and their friends and family were holding a celebration at the community garden when they were again besieged by police officers from the 46th Precinct. Without reasonable suspicion or any other legal justification, police officers rushed into the community garden, ordered people to lie on the ground, and then unlawfully searched and handcuffed them while other police officers destructively searched the garden. Although nothing illegal was found as a result of the police officers' unlawful search, the police officers nevertheless arrested PLAINTIFFS and falsely charged them with Disorderly Conduct. The baseless charges against PLAINTIFFS were eventually dismissed.

4. PLAINTIFFS seek (i) compensatory damages for loss of liberty, psychological and emotional distress, and other injuries caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; (iii) costs and attorneys' fees; (iv) and such other and further relief as this Court deems equitable and just.

## **JURISDICTION**

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of PLAINTIFFS' constitutional and civil rights.

6. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**VENUE**

7. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFFS' claims took place.

**JURY DEMAND**

8. PLAINTIFFS demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

**THE PARTIES**

9. Plaintiff SARAH RAMOS ("SARAH") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of New York County, City and State of New York.

10. Plaintiff ISRAEL CINTRON ("ISRAEL") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

11. Plaintiff OSCAR FERNANDEZ ("OSCAR") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

12. Plaintiff ANGEL SUAREZ ("ANGEL") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of New York County, City and State of New York.

13. Plaintiff JULIO SUAREZ is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

14. Plaintiff ODALIS TORRES ("ODALIS") is a Latin-American citizen of the United States, who is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

15. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

16. Defendant Police Officer ANDREA OJOBI ("OJOBI") (Tax # 955271) and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. ("DOES"), are NYPD police officers who unlawfully detained, searched, frisked, and arrested PLAINTIFFS without suspicion of any illegal activity, lodged false criminal charges against them, and caused them to be maliciously prosecuted.

17. At all times relevant herein, defendants OJOBI and DOES were NYPD Police Officers.

18. Upon information and belief, defendants OJOBI and DOES are still NYPD Police Officers.

19. At all times relevant herein, defendant police officers OJOBI and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

20. At all times relevant herein, defendant police officers OJOBI and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

21. SARAH, ISRAEL, ANGEL, JULIO, and ODALIS served Notices of Claim upon the CITY on October 30, 2014, within ninety (90) days of the events giving rise to their claims.

22. OSCAR served a Notice of Claim upon the CITY on or about February 6, 2016, within ninety (90) days of the events giving rise to his claims.

23. More than thirty (30) days have elapsed since PLAINTIFFS served their Notices of Claim and the CITY has not offered adjustment or payment thereof.

24. This action is filed within one year and ninety days of the events giving rise to PLAINTIFFS claims.

## STATEMENT OF FACTS

25. PLAINTIFFS care for and maintain a community garden on a lot located at or about 2317 Morris Avenue, Bronx, New York.

26. The lot is situated between two residential buildings and is enclosed by a chain link fence.

27. It contains various plants and animals, including dogs, chickens and flying pigeons.

28. It also contains a shed in which there is a pool table and video arcade game.

29. The shed also had stereo speakers fixed into the wall to play music and a security camera.

30. People from the surrounding neighborhood frequently congregate at the community garden.

31. Several times a year, especially in summer, social gatherings are held at the community garden where food is served and music is played.

32. Upon information and belief, the immediate neighbors of the community garden have never complained about these social gatherings and frequently participate in them.

33. On the night of August 2, 2014, a social gathering was held at the community garden to celebrate the birthday of ANGEL's niece.

34. Present at the community garden were ANGEL, JULIO, SARAH, ODALIS, OSCAR, ISRAEL, and several other people from the neighborhood.

35. People cooked, ate food and listened to music.

36. On the night of August 2, 2014, PLAINTIFFS and the other persons present at the community garden did not create any excessive or unusually loud sound that would have disturbed the peace, comfort or repose of a reasonable person of normal sensitivities, or that could have injured or endangered the health or safety of a reasonable person of normal

sensitivities, or which could have caused injury to plant or animal life, or damage to property or business.

37. On the night of August 2, 2014, PLAINTIFFS and the other persons present at the community garden did not cause any public inconvenience, annoyance or alarm; nor did they recklessly create any risk thereof.

38. On the night of August 2, 2014, PLAINTIFFS and the other persons present at the community garden did not make unreasonable noise.

39. On August 2, 2014, at approximately 9:00 p.m., several uniformed and plain clothes police officers, including officer OJOBI, rushed into the community garden.

40. At that time ANGEL, ISRAEL, JULIO, ODALIS, OSCAR and others were playing pool in the shed, while SARAH was talking to Julia Suarez and another female on the porch in front of the shed.

41. Police officer OJOBI and approximately three other police officers ordered SARAH and the two females to go outside of the community garden and stand against the fence.

42. Other police officers barged into the shed and yelled for everyone not to move.

43. Police officers grabbed OSCAR and forced him down on his knees.

44. Other police officers grabbed persons, including JULIO and ODALLIS, and threw them against the wall of the shed.

45. Other police officers grabbed persons, including ANGEL and ISRAEL, and forced them to the ground face forwards.

46. The police officer that had thrown ISRAEL on the ground got on top of ISRAEL and forcefully placed his knee in his back causing ISRAEL great pain.

47. ISRAEL told the police officer that he could not breathe.

7

48. The police officer responded by telling ISRAEL, in sum and substance, to "shut the fuck up!"

49. Police officers searched OSCAR, ANGEL and ISRAEL and the other persons that had been forced to lie on the floor of the shed.

50. As they searched the individuals on the floor of the shed, the police officers would demand and take each individual's identification card.

51. When they completed searching an individual on the floor of the shed, the police officers would then place that individual in handcuffs, take them outside, and force them to lie face downward on the ground.

52. As individuals were removed from the shed, police officers would take the individuals who had been forced to stand against the wall of the shed and force them to lie face downward on the ground where they were then searched, had their identifications taken, were handcuffed, and were then taken outside and forced to lie face down on the ground.

53. Nothing illegal was found as a result of the police officers' search of OSCAR, ANGEL, ISRAEL, JULIO and ODALIS.

54. Upon information and belief, nothing illegal was found as a result of the police officers' search of the other persons that had been in the shed.

55. The police officers told everyone that had been forced to lie handcuffed, face downward on the ground that they would have to remain there while they ran warrant checks on everyone.

56. While some police officers checked for warrants, other officers destructively searched the shed and grounds of the community garden.

57. Police officers destroyed the surveillance camera that was on the shed.

58. Police officers used hammers to smash the walls of shed.

59. Speakers that had been fixed in the wall or ceiling of the shed were destructively removed.

60. A television in the shed was destroyed by being smashed on the ground.

61. Police officers seized and removed stereo equipment from the shed, including speakers, an amplifier, and an equalizer.

62. The police officers did not inform anyone at the community garden that the seized stereo equipment could be reclaimed at the 46th Precinct or the Property Clerk's Office by presenting a District Attorney's Release or Court Disposition Form.

63. The police officers did not provide anyone at the community garden with a Property Clerk's Invoice listing the stereo equipment that they had removed.

64. While police officers were performing activities inside the community garden, other police officers, including Officer OJOBI, searched SARAH, Julia Suarez and the other female against the gate.

65. Nothing illegal was found as a result of the police officer's search of SARAH.

66. Upon information and belief, nothing illegal was found as a result of the police officers' search of Julia Suarez and the other female.

67. The police officers then demanded that SARAH, Julia Suarez and the other female provide them with their identification.

68. SARAH, Julia Suarez and the other female complied with the police officers' request.

69. Eventually, a male police officer in a white shirt returned SARAH's identification.

70. The male police officer asked SARAH who owned the dogs that were confined in a pen in the community garden.

71. SARAH responded that she owned the dogs.

72. The male police officer then told SARAH, in sum and substance, that he was going to have the dogs taken to Animal Control unless she agreed to take a ticket for making too much noise.

73. SARAH responded that she would not accept a ticket for making too much noise because she had not made too much noise.

74. The male police officer then told Officer OJOBI, in sum and substance, to lock SARAH up.

75. Officer OJOBI placed SARAH in handcuffs.

76. SARAH was then placed in an unmarked police car.

77. Julia Suarez asked the male police officer in the white shirt, in sum and substance, if the 46th Precinct did not have anything better to do than harass people at the community garden.

78. The police officer responded, in sum and substance, by telling Julia Suarez that she "talked a lot of shit" and that he would keep harassing them so Suarez could keep bringing lawsuits.

79. At some point, OSCAR and ISRAEL, still handcuffed, were taken from the community garden and placed in a police van.

80. ISRAEL asked the police officers why he was being arrested, but received no response.

81. At approximately 1:30 a.m. on August 3, 2015, ANGEL, JULIO and ODALIS were given back their identifications by the police officers and told they could leave.

82. ANGEL, JULIO and ODALIS had spent approximately four hours in police custody.

83. Before they were allowed to leave, ANGEL, JULIO and ODALIS were each given summonses charging them with Disorderly Conduct NYCPL 240.25(2): making unreasonable noise with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.

84. Upon information and belief, no one had complained to the police about unreasonable noise on the night of August 2, 2014.

85. Upon information and belief, the police did not interview any complainants about a noise complaint on the night of August 2, 2014.

86. Police officers did not interview anyone at the community garden about a noise complaint on August 2, 2014.

87. Police officers did not ask anyone at the community garden to cease or lower the sound level on the night of August 2, 2015.

88. Nor did police officers warn any alleged unreasonable noise violator or otherwise attempt to correct any alleged noise condition on the night of August 2, 2015.

89. ANGEL, JULIO and ODALIS were compelled to return to Bronx County Criminal Court approximately two times before the charges against them were dismissed.

90. SARAH, ISRAEL and OSCAR were eventually transported to the 46th Precinct.

91. At the 46th Precinct, although there was no reason to suspect that SARAH had weapons, contraband or any other evidence upon her person, Police Officer OJOBI caused SARAH to be taken to a bathroom and forced to undergo a strip search.

92. SARAH was forced to strip to her underwear, unclip her bra, and shake her upper torso.

93. The strip search was illegal, unauthorized and contrary to applicable laws and regulations

94. No weapons, contraband or any other evidence of criminal activity was found as a result of the strip search of SARAH.

95. Although there was no reason to suspect that ISRAEL had weapons, contraband or any other evidence upon his person, ISRAEL was taken to a bathroom at the 46th Precinct and forced to undergo a strip search.

96. ISRAEL was made to remove all of his clothes, bend over, squat, and then cough.

97. The strip search was illegal, unauthorized and contrary to applicable laws and regulations

98. No weapons, contraband or any other evidence of criminal activity was found as a result of the strip search of ISRAEL.

99. Although there was no reason to suspect that OSCAR had weapons, contraband or any other evidence upon his person, OSCAR was taken to a bathroom at the 46th Precinct and forced to undergo a strip search.

100. OSCAR was made to remove all of his clothes, bend over, squat, and then cough.

101. The strip search was illegal, unauthorized and contrary to applicable laws and regulations

102. No weapons, contraband or any other evidence of criminal activity was found as a result of the strip search of OSCAR.

103. After being strip searched and processed, SARAH snd ISRAEL and OSCAR were confined to separate holding cells

104. ISRAEL and OSCAR were allowed to leave the police precinct in the early morning hours of August 3, 2015, after having spent several hours in police custody.

105. Before being released from police custody, ISRAEL and OSCAR were given Desk Appearance Tickets charging them with Disorderly Conduct NYCPL 240.25(2): making unreasonable noise with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.

106. After being released from police custody, ISRAEL and OSCAR were compelled to return to Bronx County Criminal Court approximately two times before the charges against them were dismissed.

107. SARAH was eventually transported from the 46th Precinct to Bronx Central Booking.

108. Before being taken to Bronx Central Booking, Sarah was again illegally strip searched at the 46th Precinct.

109. At Bronx Central Booking, SARAH eventually saw a lawyer and was brought before a judge for arraignment.

110. At arraignment, SARAH was charged with Disorderly Conduct NYCPL 240.25(2): making unreasonable noise with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.

111. SARAH was also alleged to have an outstanding warrant.

112. Upon information and belief, there was no outstanding warrant for SARAH's arrest and that charge was dismissed.

113. SARAH pled "not guilty" to the charge of disorderly conduct.

114. SARAH was released on her own recognizance at approximately 8:00 p.m. on August 3, 2015, after having spent approximately twenty-three (23) hours in custody.

115. After being arraigned, SARAH was compelled to return to Bronx County Criminal Court three times.

116. SARAH was acquitted of the charges against her after a bench trial in which Police Officer OJOBI was the only person to testify.

117. At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

118. Defendants' conduct caused PLAINTIFFS to suffer loss of liberty, physical injury, emotional and psychological pain, embarrassment, humiliation, harm to their reputation, and deprived them of their constitutional rights

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights

119. PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

120. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive PLAINTIFFS of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

14

    a. freedom from unreasonable search and seizure of their persons and property;

    b. freedom from arrest without probable cause;

    c. freedom from use of excessive force;

    d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFFS were aware and did not consent;

    e. freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the individual defendants;

    f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

    g. freedom from deprivation of liberty without due process of law.

121. In committing the acts and omissions complained of herein, defendants OJOBI and DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

122. As a direct and proximate result of defendant NYPD police officers OJOBI's and DOES' deprivation of PLAINTIFFS' constitutional rights, PLAINTIFFS suffered the injuries and damages set forth above.

123. The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## **SECOND CAUSE OF ACTION**
### **Violations of the New York State Constitution**

124. PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

125. Defendants' conduct breached the protections guaranteed to PLAINTIFFS by the

New York State Constitution including, but not limited to, Article I, §§ 6 and 12, and including the following rights:

    a. freedom from unreasonable search and seizure of their persons and property;

    b. freedom from arrest without probable cause;

    c. freedom from use of excessive force;

    d. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention PLAINTIFFS were aware and did not consent;

    e. freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the individual defendants;

    f. freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

    g. freedom from deprivation of liberty without due process of law.

126. The deprivation of PLAINTIFFS' rights under the New York State Constitution resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
**False Imprisonment**

127. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

128. Defendant NYPD police officers OJOBI and DOES, through the foregoing acts, caused PLAINTIFFS to be wrongfully detained without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFFS were aware and to which they did not consent.

129. Defendant NYPD police officers OJOBI and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

**FOURTH CAUSE OF ACTION**
**Malicious Prosecution**

130. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

131. Defendant NYPD police officers OJOBI and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against PLAINTIFFS, which ended in their favor, without probable cause to believe PLAINTIFFS were guilty of the crimes charged or any crimes.

132. Defendant NYPD police officers OJOBI and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

**FIFTH CAUSE OF ACTION**
**Assault and Battery**

133. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

134. Defendant NYPD police officers OJOBI and DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFFS causing them injury.

135. Defendant NYPD police officers OJOBI and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFFS' rights, and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

136. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

137. Defendant NYPD police officers OJOBI and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused PLAINTIFFS to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

138. Defendant NYPD police officers OJOBI and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
*Respondeat Superior*

139. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

140. At all relevant times, defendant NYPD police officers OJOBI and DOES were employees of the City and were acting within the scope of their employment.

141. The CITY is therefore vicariously liable under the common law doctrine of *respondeat superior* for the actions of defendant NYPD police officers OJOBI and DOES set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, PLAINTIFFS demand the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendant NYPD police officers OJOBI and DOES to the extent allowable by law;

(c) attorneys' fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, New York  
March 25, 2016

BELDOCK LEVINE & HOFFMAN LLP  
99 Park Avenue, Suite 2600  
New York, New York 10016  
(212) 490-0400

  /s/Marc A. Cannan            
Marc A. Cannan (MC0513)  
*Attorneys for Plaintiffs Sarah Ramos, Israel Cintron, Angel Suarez, and Odalis Torres*